## WIGGIN *v.* SCAMMON.

A person who makes a written agreement to graft apple trees, is bound to furnish whatever is necessary for that purpose.

Upon a written contract to graft apple trees, the plaintiff alleged that the defendant provided part of the scions, and introduced evidence to that effect. The contract was made on the 6th of April, and the evidence was that in the month of May the defendant proposed to furnish the scions. *Held,* that this evidence was competent, as it tended to corroborate the plaintiff's witnesses, who testified that the defendant furnished a part of the scions, and also because it did not appear to have been made before the written contract was entered into.

The plaintiff agreed to graft some trees in the years 1847 and 1848. He performed the contract in part in 1847, and offered to complete it in 1849, but the defendant told him he did not wish him to do it then, but that he might come the next year. *Held,* that even if the plaintiff's offer in 1848 was too late in the season, the statement by the defendant that he might come the next year was a waiver of any exception on this account.

ASSUMPSIT. The declaration originally contained three counts. The first two counts were upon a contract made on the 6th of April, 1847, by which the plaintiff agreed to graft seventy-four apple trees, within two years, for the sum of $50. The third count was general, for work and labor and materials found in grafting trees. The special counts alleged performance, but the evidence tended to prove performance in part, and a legal excuse for the non-performance of the residue. The variance was objected to, and thereupon a new count was added. The agreement was in writing, as follows:—

"*Articles of agreement,* made and concluded the 6th day of April, one thousand eight hundred and forty-seven, by and between Stephen Scammon, of Stratham, county of Rockingham, State of New Hampshire, in one part, and Andrew Wiggin, of Stratham, aforesaid, in the other part. That the said A. Wiggin, for the consideration of $50, to be paid by S. Scammon, as hereafter mentioned, hath agreed, and doth agree to graft seventy-four apple trees, suit-

able for a top, situated on land occupied and owned by the said Scammon, in Stratham, aforesaid.

The time for completing the tops to be two years, eighteen hundred and forty-seven and eight. Time of payments, twenty-five dollars the first year, and twenty-five dollars the second.

And the said Scammon on his part doth hereby agree to pay, or cause to be paid, the above sum of fifty dollars.

(Signed) STEPHEN SCAMMON.
ANDREW WIGGIN."

The amended count was as follows :—

" For that heretofore, to wit, on the 6th day of April, A. D. 1847, at Stratham, aforesaid, by a certain written agreement, then and there made between the said plaintiff and the said Scammon, the said plaintiff agreed, for the consideration of fifty dollars, to be paid by the said Scammon, to graft seventy-four apple trees, suitable for a top, situated on land occupied and owned by the said Scammon, in Stratham aforesaid, and to complete the tops, to wit, a good top in two years, to wit, the years 1847 and 1848. And it was also then and there agreed between the said plaintiff and the said Scammon, that the said Scammon should pay 'to the plaintiff therefor the sum of fifty dollars, to wit, twenty-five dollars the first year, twenty-five the second year, to wit, the year 1848, and the said agreement being so made afterwards, to wit, on the 6th day of April, A. D. 1847, at Stratham, aforesaid, in consideration thereof, and that the said plaintiff, at the special instance and request of the said Scammon, had then and there undertaken and faithfully promised the said Scammon to perform and fulfil the said agreement in all things, on the said plaintiff's part, to be performed and fulfilled, he, the said Scammon, undertook, and then and there faithfully promised the plaintiff to perform and fulfil the said agreement in all things, on the part

and behalf of him, the said Scammon, to be performed and fulfilled; and although the said plaintiff hath always, from the time of the making of the said agreement, been ready and willing to perform and fulfil all things on his part and behalf, in the said agreement to be performed and fulfilled, and did afterwards, to wit, on the 5th day of May, A. D. 1847, at said Stratham, enter upon and commence the said work, and did the same in part—hath always been ready and willing to perform and complete the whole of the said work, in pursuance of said agreement, and did then and there offer to complete said work, to wit, on the twentieth day of May, A. D. 1848, and afterwards, to wit, on the first day of May, A. D. 1849, did again offer to complete said work; yet the said plaintiff in fact saith that the said defendant, contriving and wrongfully intending to injure the said plaintiff, did not nor would suffer or permit the said plaintiff to proceed to complete said work, and then and there wholly hindered and prevented him from so doing, and then and there wrongfully discharged the said plaintiff from any further performance or completion of his agreement, and promise, and undertaking; and the said defendant, not regarding his said promise and undertaking, did not nor would perform the same, or any part thereof, but thereby deceived the said plaintiff in this, to wit, that the said Scammon did not nor would pay to the said plaintiff the said sum of fifty dollars, in manner aforesaid, nor any part thereof, but hath hitherto wholly neglected and refused so to do."

The plaintiff grafted about three-fourths of each tree in 1847; but as to this the defendant insisted that it was done too late in the season, that different kinds of fruit were mixed up in the same tree, in some instances, and in others bad fruit was grafted.

The plaintiff denied these allegations, and also introduced evidence tending to show that part of the scions were provided by the defendant himself, and that some mixing al-

ways occurs in grafting, and that with all their care, experienced men cannot well avoid it. And he called Mr. Langly, who testified that he heard a conversation between the parties, in which the defendant proposed to furnish the scions, and the plaintiff interposed no objections. It was doubtful whether this conversation was before or after the contract was entered into, and the defendant's counsel objected to its reception, but the witness was confident that the interview was in May, and the court ruled that the evidence was admissible, as tending to render it more probable that the witness was correct, who testified that the defendant provided a part of the scions. About the 20th of May, 1848, the plaintiff went to the defendant's house, in order to finish his undertaking, but the defendant objected, assigning as reasons that he could not board him, and could not take care of the brush, and that he might come the next year. And the next year, in April, the plaintiff started for the defendant's, to complete the work, but met him on the way, and was told by him that he did not wish him to do it, that he had no grafting which he wanted done, and had no money to pay for it; and so the plaintiff went another way. Experts testified that the best time for grafting is from the 1st of April to the 15th or 20th of May, though they sometimes graft as late as the first week in June. If the grafting is late, the scion does not usually grow much the first year, and is more likely to die in case the season is dry.

The court instructed the jury substantially as follows:

" By the contract the plaintiff was bound to furnish suitable scions, and graft in the proper season, and make a good top, as good as he could by the exercise of ordinary care and skill as a grafter. The law does not require of him extraordinary care or skill. Yet if the defendant actually furnished scions which he desired set, he cannot be heard to object that they bear poor fruit. You will, in the first place, decide how much the plaintiff performed, and allow for it a proportional part of the $50, unless you find that the de-

fendant in respect to it, has sustained damage, by reason of an untimely, or unskilful, or neglectful performance, in which event, you will allow only the balance, if any, after deducting the damages. Having settled these questions, you will then inquire whose fault was it that the contract was not wholly performed, and allow to the innocent party for the loss, if any, which he suffered on account of the breach in the contract.

Yet if you find that the fault was upon the part of the defendant, you will not allow the plaintiff as damages any more than he would have received if he had gone on with the business. He would have had the rest of the work to do, and would have received for it the residue of the money. How much would he have gained?

We have been requested to instruct you that if in 1848 the plaintiff came out of season to do the grafting, any agreement that the plaintiff might finish the grafting in 1849, would be without consideration, and so would not change the rights of these parties. But we say to you that the defendant could waive his rights in respect to the time of performance, and if you believe he agreed that the plaintiff might come in 1849, and this caused him to incur trouble and expense in the faith of the defendant's promise, it was a waiver of the defendant's rights in this respect."

The jury returned a verdict for the plaintiff, which the defendant moved to set aside, because of said rulings and instructions. He also moved to arrest the judgment, " because the fourth (or amended) count in the declaration alleges a contract to be performed in 1847 and 1848, and excuses a non-performance, by averring an offer of the plaintiff to perform in 1848 and 1849."

*Marston*, for the plaintiff.

*Hatch*, for the defendant.

GILCHRIST, C. J.  Nothing is said in the contract about furnishing the scions, but as the plaintiff was to graft the trees, the inference is that he is to furnish whatever is necessary in order that the trees might be grafted.

The contract was made on the 6th of April.  There was evidence that the defendant furnished part of the scions, and that this was done upon his proposition, to which the plaintiff did not object.  The case finds that it was doubtful whether this was before or after the contract was made.  But the witness testified it was in May, and that seems to be enough to render the evidence competent.  The court gave another reason.  A witness said that the defendant furnished part of the scions.  If another witness says that the defendant proposed to do so, it tends to corroborate the first witness, and on either ground the evidence is competent.

The instructions do not appear to be open to any exception.

The contract was to be performed in 1847 and 1848. The motion in arrest is because the plaintiff excuses a non-performance in 1848 and 1849.  But the count alleges that he performed it in part in 1847, and offered to complete it in 1848, and that is enough.  That he again offered to complete it in 1849 can be no injury to the defendant.  Nor is the allegation anything more than surplusage.

*Judgment on the verdict.*